IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAVELLE RICHARDSON,          :
          Petitioner,        :
          v.                 :  Case No. 3:14-cv-15-KRG-KAP
MICHAEL WENEROWICZ, WARDEN,  :
S.C.I. GRATERFORD,           :
          Respondent         :

## Report and Recommendation

### Recommendation

Petitioner Lavelle Richardson is serving a life sentence for first-degree murder (with additional consecutive sentences amounting to 22-48 months for reckless endangering and possession of a firearm without a license), a sentence imposed by the Honorable Hiram Carpenter of the Court of Common Pleas of Blair County on November 14, 2002. Richardson seeks a writ of habeas corpus under 28 U.S.C.§ 2254. I recommend that the petition be denied and that a certificate of appealability be denied.

### Report

#### I: Facts and procedural history

At closing time in the early morning hours of July 21, 2001, Richardson was outside the Arandale Elks Club in Altoona Pennsylvania in a parking lot where there were between 20 and perhaps as many as 75 persons. According to witnesses Richardson was engaged in an argument with Vicki Smith about Smith testifying against Jodi Brown, a relative of Richardson's, in a criminal

matter. In the course of the argument Smith slapped Richardson, who went to his car and retrieved a 10 mm/.40 cal. semiautomatic pistol. According to witnesses, Richardson fired one shot toward Smith and four into the air. The bullet aimed toward Smith struck and killed Patience Ferguson. The bullet that killed Ferguson entered through her mouth, knocking out one incisor, and exited through the soft tissues in her neck. Five casings and one bullet from .40 cal. Smith and Wesson cartridges were found in the parking lot. Richardson, who was from Mt. Union in Huntingdon County, left the scene of the shooting before police arrived. On July 25, 2001, Richardson surrendered in Centre County to members of the Pennsylvania State Police by arrangement through counsel, William Fleming, Esquire. A pistol that was identified as the one that fired the shots in Altoona was subsequently retrieved (with unfired cartridges of the same type as the casings and bullet recovered at the scene of the shooting) from Lake Raystown in Huntingdon County and traced through witness testimony to Richardson.

From newspaper accounts in the record it appears that the prosecution first believed that because there was no connection between Richardson and Ms. Ferguson the shooting had been merely reckless, but after investigation disclosed the argument between Vicki Smith and Richardson the Commonwealth pursued a charge of

2

first-degree murder under the doctrine of transferred intent. The doctrine is codified in the Pennsylvania Crimes Code at 18 Pa.C.S.§ 303(b), establishing culpability when intent must be proved if it is shown that the actual result differs from the contemplated result only in the respect that a different person is harmed. <u>See</u> <u>Commonwealth v. Gaynor</u>, 648 A.2d 295 (Pa.1994) (defendant Gaynor and his adversary Johnson engaged in a shootout in front of a store where children were playing; Gaynor intended to kill Johnson; a child was shot and killed by Johnson during the shootout; Gaynor was guilty of first-degree murder under §303(b)).

George Henry Newman, Esquire, and David McLaughlin, Esquire, represented Richardson at the preliminary hearing in August 2001 but then withdrew from the case, and in September 2001 the Court of Common Pleas of Blair County first briefly appointed Terry Despoy, Esquire, and then appointed John Siford, Esquire, to represent Richardson. Siford represented Richardson throughout the pretrial period, filed pretrial motions on December 21, 2001 that were granted in part (motion to appoint expert witness in ballistics, motion to dismiss second degree murder charge) and denied in part (motion to change venue or venire, motion to dismiss first degree murder charge) on April 30, 2002, and selected a trial jury on July 15, 2002. According to a pretrial conference at which

Judge Carpenter inquired into the knowing and voluntary nature of Richardson's desire to proceed at trial with new counsel, at some point after jury selection Richardson retained Nino Tinari, Esquire, who entered his appearance on or about July 24, 2002 and represented Richardson at the trial that began on Monday July 29, 2002.

The defense presented by Tinari was that Richardson did not have or fire a weapon that night, that in the crowded confusion of closing time with as many as 75 persons in the parking lot and at least one other confrontation (between a doorman and a patron) taking place outside the club, and that there were no reliable eyewitnesses who could say that it was Richardson and not someone else who fired the shot that killed Patience Ferguson; the alternative defense was that even accepting the testimony of the Commonwealth's witnesses Richardson was not guilty of first-degree murder because there was no evidence that Richardson had intentionally shot at Vicki Smith. Richardson himself testified that he had left the parking lot about the time the shooting began.

The jury returned verdicts of guilty on August 2, 2002. After being sentenced on November 14, 2002, Richardson proceeded to a direct appeal, represented by Tinari. The conviction and sentence were affirmed by the Pennsylvania Superior Court in a

4

memorandum opinion at _Commonwealth v. Richardson_, No. 2013 WDA 2003 (Pa.Super. April 6, 2005) and the Pennsylvania Supreme Court denied Tinari's petition for allowance of appeal at _Commonwealth v. Richardson_, No. 222 WAL 2005 (Pa. December 29, 2005).

In November 2006, Richardson filed a petition under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S.§ 9541 _et seq._, alleging _inter alia_ that trial counsel had been ineffective. The court again briefly appointed Attorney Despoy to represent Richardson, but Colin Heuston, Esquire, subsequently entered an appearance for Richardson and filed an amended PCRA petition on June 8, 2007. Judge Carpenter held an evidentiary hearing on November 10, 2009, and denied the petition on September 20, 2010. Richardson appealed from the denial of the petition, at first _pro se_ and then through Heuston. The Pennsylvania Superior Court affirmed the trial court's decision by memorandum opinion at _Commonwealth v. Richardson_, No. 260 WDA 2012 (Pa.Super. April 1, 2013). The Pennsylvania Supreme Court denied Heuston's petition for allowance of appeal at _Commonwealth v. Richardson_, No. 230 WAL 2013 (Pa. November 13, 2013). Richardson, who had already presented claims exhausted on direct appeal by filing a petition in this court while his PCRA petition was pending, _Richardson v. DiGuglielmo_, Case No. 3:09-cv-70-KRG-KAP (W.D.Pa.)(petition

dismissed without prejudice to proceeding in one exhausted petition) then filed this petition.

Richardson presents what he divides up into 18 claims, several with subparts. I will summarize the claims because it serves no useful purpose to quote the petitioner *verbatim*:

1) There was a <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), violation because the prosecution sent the bullet recovered at the crime scene for testing for blood and human tissue, obtained a negative test result, and failed to disclose that test and its results.

2) Restates Claim One and asserts this was a violation of due process, equal protection, and the right to a fair trial.

3) There was prosecutorial misconduct when the prosecution failed to correct the perjured testimony of Carla Jo Thomas Smith identifying Richardson as the shooter.

4) The prosecution violated the Fifth Amendment and Sixth Amendment by the attempt of police officers to have Richardson waive his right to remain silent and by using Richardson's invocation of his right to remain silent against him.

5) The court violated Richardson's rights by denying Tinari a continuance and forcing Siford to pick the jury even though Tinari had entered his appearance.

6) The denial of Tinari's motion for continuance deprived him of the opportunity to make a Batson v. Kentucky, 476 U.S. 79 (1986) challenge to the venire, which did not contain any black veniremen.

7) Siford was ineffective for refusing to participate in jury selection after being informed that Tinari had entered an appearance, by failing to object to the all white venire, and by failing to make any Batson challenges during the selection of the petit jury.

8) A new trial should have been granted due to after-discovered evidence that Richardson was not the shooter.

9) It was error to deny change of venue or venire because there was excessive pretrial publicity.

10) The prosecutor committed misconduct in the closing argument by simulating use of the murder weapon in his closing, by expressing his personal opinion, and by appeals to the sympathy of the jury.

11) The prosecutor committed misconduct by referring to Richardson's post-arrest silence.

12) The evidence was insufficient to support the verdict.

13), 14), 15) After the trial Richardson obtained an expert report contradicting the prosecution's theory that the bullet recovered in the parking lot was the bullet that killed Ferguson, this evidence undermines any confidence in the verdict, and Tinari was

ineffective for failing to obtain this evidence at the time of trial.

16) The state courts erred in failing to find the Brady violation asserted in Claim One, the prosecutorial misconduct asserted in Claim Three, and the prosecutorial misconduct asserted in Claim Four.

17) The state courts erred in failing to find the violations connecting with jury selection asserted in Claim Five, Claim Six, and Claim Seven.

18) The state courts erred in denying relief based on the after-discovered evidence and ineffectiveness claims asserted in Claims Thirteen, Fourteen, and Fifteen relating to the expert report about the bullet recovered in the parking lot, and based on the Brady violation asserted in Claim One, and based on ineffective assistance of counsel in not proving the Brady violation asserted in Claim One.

As can be seen from comparing Richardson's claims with those raised by counsel in the state courts, Richardson attempts to present every claim presented to the state court and some not presented to the state courts.

On direct appeal, Tinari made five claims: 1) that a new trial should be granted based on after-discovered evidence that

Richardson did not fire the shot that killed the victim; 2) that because of the sensational nature of the crime and the extensive pretrial publicity it was error to deny a change of venue or venire; 3) that the prosecutor committed misconduct in his closing; 4) that the prosecutor improperly referred to Richardson's post-arrest silence; and 5) that the evidence was insufficient to sustain the verdicts.

The Pennsylvania Superior Court rejected the after-discovered evidence claim on the merits. <u>Commonwealth v. Richardson</u>, No. 2013 WDA 2003 Memorandum op. (Pa.Super. April 6, 2005). The foundation for the claim was a transcript dated September 14, 2004, of a conversation between Karim Shabazz, a private investigator, and Rena Davis, a resident of Huntingdon County familiar with Richardson. According to the statement, shortly after the shooting took place a Bradley Walker called Rena Davis, his neighbor, asking for clean clothes because his had blood on them from being near Ferguson when she was shot, that Rena Davis met Walker in Tyrone, Blair County, with the clothes, and that when Shabazz asked whether Walker had said whether Richardson was involved, Davis stated that "No, he" (from the context it is not clear and the statement is not explicit whether the reference is to Walker or Richardson; at points Richardson implies that the

reference is to Walker, and the Pennsylvania Superior Court implicitly found that Walker was being referred to) "said a cousin, he just said my cousin killed my girl." The statement indicates that Rena Davis believed the cousin referred to was one Rocky Robinson, who allegedly also admitted to Davis that he disposed of a pistol in Lake Raystown immediately after the shooting. Davis also stated that she had previously seen Robinson, but not Walker or Richardson, with a weapon, and that the opinion of unnamed others was that Richardson was not the shooter.

The Pennsylvania Superior Court observed that Davis' statement was made two years after the trial, that there was no explanation for the failure to obtain the statement sooner, and that it contained no direct exculpatory evidence but only vague and hearsay statements.

The Pennsylvania Superior Court rejected the pretrial publicity claim on the merits after review of the record, finding that the pretrial news accounts did not refer to any confession by or prior record for Richardson and were neither sensational nor inflammatory, and additionally that Judge Carpenter had conducted individual voir dire of any individual who claimed knowledge about the case and excluded any person who claimed to have an opinion or any reservations about impartiality as a result. The newspaper

articles, which are contained in the record, are from Altoona (*Altoona Mirror*, Blair County), and Huntingdon/Mt. Union (*The Daily News*, Huntingdon County) newspapers.

The claim of prosecutorial misconduct during closing comprised claims that the prosecutor handled the pistol used in the shooting and simulated its use, that he expressed his personal opinion about the veracity of witnesses, including a reference to defense counsel as offering "red herrings," and that he made a personal appeal for a conviction based on sympathy for the victim's family. The Pennsylvania Superior Court rejected this claim on the merits. After reviewing the closing argument the panel found the prosecutor's closing was permissible advocacy, and observed in passing that there was no authority for the proposition that it is improper to refer to or demonstrate physical evidence during a closing. The court also noted that Judge Carpenter gave a requested instruction explaining the duty of the jury and cautioning against deciding based on sympathy or prejudice.

The claim of an improper reference to Richardson's post-arrest silence stemmed from a question the prosecutor asked Altoona Police Department Patrolman Patrick Himes, one of the first officers to respond the night of the shooting, who testified about arriving at the scene and assisting bystanders who were giving

first aid to Ms. Ferguson. After Ms. Ferguson left in an ambulance, Himes stayed to collect information from potential witnesses and to take the registration information and license plate numbers of vehicles in the parking lot. Cross examination covered the fact that there were owners of cars in the parking lot that Himes had not interviewed. On re-direct, the prosecutor first established that Himes' investigation of license plates revealed that Richardson's vehicle was not in the parking lot, and then asked the following question:

[Keating]: And did you-did you interview him [i.e. Richardson] at the scene?
[Tinari]: Objection
[Himes]: No, I didn't.
[Tinari]: Move for a mistrial, Your Honor.
[Judge Carpenter]: Counsel, we'll deny the motion for mistrial, Lets - let's have a question Mr. Keating.
[Keating]: No further questions, Your Honor.

Tinari asked for a mistrial without assigning grounds. On appeal he claimed that there had been an improper reference to Richardson invoking his right to remain silent, and the Pennsylvania Superior Court, overlooking the procedural issue, found that there was no suggestion from the question or answer that Richardson refused to make a statement or invoked his right to remain silent, and that it was clear from the testimony that Richardson was not present at the scene. The court did not expressly state the obvious, that

12

there was no post-arrest silence to refer to for the reason that there had not yet been any arrest.

As for the sufficiency of evidence, the Pennsylvania Superior Court mentioned in its brief recounting of the testimony that it had been established that Richardson was present at the scene, that Richardson was involved in an argument and retrieved a gun, and that he fired shots in the direction of an individual (by implication, Vicki Smith) that struck and killed Patience Ferguson. The court found the evidence sufficient to support a verdict of first-degree murder based on a theory of transferred intent (again by implication, that Richardson intended the death of Smith). Although the court did not cite the record, the testimony of Karla Jo Thomas-Smith (or Carla, as it is sometimes spelled) was that she witnessed the argument and Richardson's retrieval of a pistol, and that the first shot by Richardson, to whom she had been introduced that night as Juan (the court reporter for that trial day recorded this as "Wan"), was "straight ahead" toward Vicki Smith, whom she identified as "Princess." (Thomas-Smith did not know Vicki Smith until after the shooting but went to identify her because she wanted to know who was responsible for the fight and her friend Patience Ferguson getting shot.) Richardson then fired four times into the air. Thomas-Smith was

thereafter focused on the injury to her friend and did not see Richardson leave but did notice later that his vehicle had gone.

On collateral attack, Heuston made two claims in the amended PCRA petition, the second claim having two subclaims: 1) that there was a <u>Brady</u> violation because the Commonwealth conducted forensic testing of the bullet found in the parking lot, had discovered that there was no biological material that would match the victim on it, and withheld this test and its negative results from the defense; and 2) that based on the report of Doctor Bonnell, an expert witness retained after trial, it was physically impossible for the bullet recovered by police to have caused the victim's entry wound because it would have knocked out more than one tooth, and Tinari provided ineffective assistance of counsel by failing to retain an expert prior to trial who would have presented that testimony or possibly caused Tinari to present a different defense theory. At the PCRA hearing before Judge Carpenter, to avoid having Doctor Bonnell come from California, the Commonwealth stipulated that his testimony would be consistent with his affidavit.

Judge Carpenter, in his opinion denying PCRA relief, found as a fact that there had been no forensic testing of the bullet and therefore nothing on which to base a <u>Brady</u> claim.

Richardson's assertion that there had been such a test was based on the following portion of the transcript of an exchange between Attorney Tinari and Altoona Police Department Sergeant Michael Jones, the evidence custodian, who also happened to have been the officer who found the bullet and who took photographs of the spot where it was found:

Q. Did you when you picked up the projectile ascertain whether or not there was any blood on the projectile?
A. I didn't make a close examination, sir.
Q. Well you sent it away for that determination, didn't you?
A. Yes sir. I did.
Q. And the results were there was no blood or human tissue on it. Correct?
A. Yes, sir.

There was no followup by Tinari, who went on to ask only a couple of questions about a photographs of the scene. According to Judge Carpenter any suggestion from this exchange that there had been testing was flatly contradicted by the testimony of Pennsylvania State Police Corporal Jack Wall, the Commonwealth's firearms expert who actually testified about the ballistic tests done on the bullet, and Doctor Harold Cottle, the medical examiner who performed the autopsy on the victim.

As for the report of Doctor Bonnell, Judge Carpenter found as a matter of fact that "no one knew he existed at the time." Analyzing the report, Judge Carpenter found it simplistic

15

and refuted by the evidence presented at trial, and observed that because one could find an expert witness for "almost any position on almost any issue if one looks for it hard enough" if a new trial were to be awarded on the basis of such an expert opinion obtained years after trial, then "we had better be prepared to retry every murder case." According to Judge Carpenter, since Tinari "had neither notice nor knowledge of" Doctor Bonnell's report the report should be analyzed under the standards for after-acquired evidence, and as so analyzed was untimely and weak impeachment evidence. By implication Tinari was not ineffective for failing to present such evidence.

A panel of the Pennsylvania Superior Court affirmed the denial of the PCRA petition at <u>Commonwealth v. Richardson</u>, No. 260 WDA 2012 Memorandum op. (Pa.Super. April 1, 2013), adopting Judge Carpenter's Rule 1925 opinion, and making some additional comments about the merits of the claims. The Pennsylvania Superior Court observed that there was no reasonable probability that an opinion like Doctor Bonnell's would have changed the outcome at trial and that because of the lack of evidence that the absence of the opinion caused any prejudice, Tinari was not ineffective. Mem. op. at 6.

## II: Standard of review

### A: AEDPA

In their arguments, neither petitioner nor respondent appreciates the effect on this court's standard of review of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996. This court does not review the trial and PCRA proceedings de novo. Where a state court (here, the last state court to rule on the merits of a claim either on direct appeal or collateral attack was the Pennsylvania Superior Court) adjudicates a claims on the merits, to obtain relief a petitioner must show that the ruling:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.§ 2254(d). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir.2004); Thomas v. Horn, 570 F.3d 105 (3d Cir.2009).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert, 387 F.3d at 234 (quoting Williams v. Taylor, 529 U.S. at 405-06). Few state court decisions will be contrary to precedent.

A challenge that there was an "unreasonable application" of federal law focuses on whether the state court unreasonably applied Supreme Court precedent (not what lower federal courts have said about Supreme Court precedent). See Renico v. Lett, 559 U.S. 766, 778-79 (2010); White v. Woodall, 134 S.Ct. 1697, 1702 (2014). A state court decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," Williams v. Taylor, 529 U.S. at 407.

Federal courts "are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir.2000). It is not enough for petitioner to show that the state court's

adjudication was an "incorrect or erroneous" application of Supreme Court precedent. Wiggins v. Smith, 539 U.S. 510, 521 (2003). Instead, petitioner must show that the state court's adjudication was "objectively unreasonable," meaning the "outcome...cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir.2004) (citations omitted); Abu-Jamal v. Horn, 520 F.3d 272, 279 (3d Cir.2008) ("Under the 'unreasonable application' prong of §2254(d)(1), 'the question...is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold.") As at least seven members of the Supreme Court have observed, Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal. A petitioner must show an extreme malfunction in his prosecution so egregious that it is beyond any possibility for fairminded disagreement. Harrington v. Richter, 562 U.S. 86, 102-03 (2011).

## B: Effective Assistance of Counsel

The clearly established federal law governing claims of ineffectiveness is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner must show that

counsel's performance "fell below an objective standard of reasonableness." 466 U.S. at 688; see also Williams v. Taylor, 529 U.S. at 390-91. The law presumes that counsel was effective:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

466 U.S. at 689 (internal citations and quotations omitted). There is no one correct trial strategy. Lewis v. Mazurkiewicz, 915 F.2d 106, 115 (3d Cir.1990)("[W]hether or not some other strategy would have ultimately proved more successful, counsel's advice was reasonable and must therefore be sustained.") It is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir.1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir.1989)).

Under <u>Strickland</u>, a petitioner also must show that he was prejudiced by the deficient performance, that is, "that counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. A petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694; <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. at 391.

Habeas review of ineffective assistance of counsel claims most often proceeds under 28 U.S.C.§ 2254(d)(1)'s "unreasonable application" prong. <u>See</u> <u>e.g.</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170 (2011); <u>Harrington v Richter</u>, <u>supra</u>; <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). Taking <u>Strickland</u> and AEDPA together, a federal court's review in habeas of a state court's assessment of counsel's stewardship must be doubly deferential. <u>Knowles v. Mirzayance</u>, 556 U.S. at 123.

<u>C: Sufficiency of the evidence</u>

In a habeas corpus proceeding, when there is a challenge to the sufficiency of the evidence:

[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction .... does not require a court to ask itself whether it believes that the evidence at the

21

trial established guilt beyond a reasonable doubt. ...Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Byrd, 105 F.3d 145, 147 (3d Cir.), cert. denied, 520 U.S. 1268 (1997)(quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)(internal citations and quotes omitted). See also Coleman v. Johnson, 132 S.Ct. 2060 (2012)(per curiam).

D: The record for review

AEDPA provides that findings of fact made by the state court cannot be rejected in the absence of clear and convincing evidence that they are wrong. 28 U.S.C.§ 2254(e)(1). Unless the petitioner shows that the state court did not afford any fair opportunity to make a record or that he could not have made a record because the claim is based on a new rule of law or on evidence newly discovered after state remedies were unavailable - and neither of those conditions exists here - the evidence that this court must use in reviewing legal conclusions under Section 2254(d)(1) and facts found by the state court under Section 2254(d)(2) is the evidence presented to the state court. See 28 U.S.C.§ 2254(e)(2); Cullen v Pinholster, supra; Brown v. Wenerowicz, 663 F.3d 619, 629 (3d Cir.2011)("In light of Pinholster, district courts cannot conduct evidentiary hearings to

supplement the existing state court record under 28 U.S.C. § 2254(d). Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record. This would contravene AEDPA, which requires petitioners to diligently present the facts in state court before proceeding to the federal courthouse."), cert. denied, 132 S.Ct. 1934 (2012); Grant v. Lockett, 709 F.3d 224, 231 (3d Cir. 2013)("In addition, review of a claim under §2254(d)(2) is specifically limited to 'evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)(2).")

E: Claims not exhausted in the state court

This court cannot grant relief on claims that a petitioner did not present in substantially similar form both as to the facts and the federal law to each available level of the state courts. 28 U.S.C.§ 2254(b)(1) and (c). See Baldwin v. Reese, 541 U.S. 27, 33 (2004); Duncan v. Henry, 513 U.S. 364, 366 (1995)(per curiam).

When a petitioner has not exhausted federal claims and cannot now do so because the state courts would consider them barred, those claims ordinarily are procedurally defaulted and cannot be reviewed in habeas unless the petitioner shows either a miscarriage of justice or cause for his default and prejudice.

<u>Coleman v. Thompson</u>, 501 U.S. 722, 749-50 (1991). Showing a miscarriage of justice is synonymous with a credible showing of actual innocence, <u>see</u> <u>McQuiggin v. Perkins</u>, 133 S.Ct. 1924, 1931 (2013). That ordinarily requires new and trustworthy scientific evidence, eyewitness accounts, or physical evidence. <u>Hubbard v. Pinchak</u>, 378 F.3d 333, 340 (3d Cir.2004).

Showing cause for a procedural default requires proof that counsel was ineffective at a stage of the proceeding at which the petitioner was entitled to the effective assistance of counsel, or that the factual basis for a claim was not available to counsel, or that state officials made compliance with the procedural rule impracticable. <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Prejudice is shown when the error "infect[ed] [an] entire trial with error of constitutional dimensions." <u>Murray v. Carrier</u>, 477 U.S. at 494 (internal quotations omitted).

Ineffective assistance of counsel at trial can constitute cause. <u>Strickland v. Washington</u>. So can ineffective assistance of counsel on direct appeal. <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985). <u>Coleman v. Thompson</u> holds that a petitioner bears the consequences of attorney error after the first direct appeal, so ineffectiveness of counsel at any subsequent stage does not constitute cause to excuse the default of a claim. <u>Martinez v. Ryan</u>, 132 S.Ct. 1309

(2012) limits <u>Coleman v. Thompson</u> by holding that attorney error in collateral proceedings may sometimes establish cause for the default of a claim of ineffective assistance of trial counsel. <u>Martinez v. Ryan</u> applies when the attorney error in collateral proceedings is itself ineffectiveness under the <u>Strickland v. Washington</u> standard, and where the underlying ineffectiveness of trial counsel claim is a "substantial" one. <u>Martinez v. Ryan</u>, 132 S.Ct. at 1318. However, <u>Martinez v. Ryan</u> is limited to defaults in collateral proceedings caused by ineffective counsel at the trial level, not in appeals. <u>Norris v. Brooks</u>, 794 F.3d 401, 404-05 (3d Cir. 2015), <u>cert.</u> <u>denied</u>, 136 S.Ct. 1227 (2016). Hence, to obtain review of any claims not exhausted on direct appeal, Richardson must show ineffectiveness by Tinari as well as prejudice; to obtain review of claims not exhausted in the PCRA proceedings, Richardson would have to show that they are substantial claims of Tinari's ineffectiveness and that they were defaulted by Heuston's ineffectiveness in the trial court.

## III: Review of claims

The <u>Brady</u> claim presented in Claim One and as a foundation for Claim Two and subsequent claims was rejected because Judge Carpenter found as a fact that there had been no testing of the bullet for blood and tissue. Judge Carpenter found that the

testimony by Corporal Wall and Doctor Cottle contradicted that of Sergeant Jones and outweighed it. Several other reasons for the discrepancy come readily to mind: Sergeant Jones misspoke; Sergeant Jones misunderstood the question, believing the question to be about ballistics testing; the court reporter failed to record the exchange correctly; or there were nonverbal cues that the jury understood to put the question and answer in context but that the transcript could not record, for instance that Tinari was talking rapidly and asked a new question while Jones was still thinking about and replying to an earlier one. Since Tinari, Heuston and Richardson have never pointed to any other evidence that the test allegedly referred to does exist, Judge Carpenter did not make an unreasonable determination of the facts, and therefore did not unreasonably reject the claim.

It would be gross error for a reviewing court to point to an isolated portion of the transcript and declare (without even consideration of credibility) that it establishes a fact so certainly that any contrary finding is unreasonable. Given a simple discrepancy that can be explained by dittography, haplography, or other familiar error in the making of a transcript, a trial judge's finding about what took place at trial can rarely if ever be rejected as unreasonable based on a single entry in the transcript.

For an illustration in this very matter, the PCRA transcript records the current District Attorney, reading aloud the portions of the trial transcript relevant to this argument, as describing the bullet referred to in this claim as weighing "162 grams." I am not certain that the bullet was 162 grains, but I am certain that it was not 162 grams. Either the District Attorney misspoke or the court reporter did not hear the difference between grains and grams, but I am certain that one of the two of them substituted a word that means small unit of weight for a similar sounding word that means small unit of weight. On Richardson's view of things the PCRA transcript would estop the Commonwealth from denying that someone fired a five ounce bullet, and therefore that the state courts erred in not overturning the verdict because there were at least two shooters at the Elks Club, Tinari was ineffective for not obtaining an expert to point out a five ounce bullet would not have produced the entry wound testified to by the Commonwealth's witnesses, and Heuston was ineffective for failing to make such a claim in the PCRA hearing. A litigant's post-trial combing of a transcript for alleged smoking guns is reasonably rejected by the trial judge who was there when the transcript was made.

Claim Three, not exhausted in the state courts, misunderstands what perjured testimony is. Testimony by Karla Jo

27

Smith that Richardson asserts was contradicted by other testimony from Stephanie Hockenberry is not, simply by reason of the contradiction, perjured testimony. If this claim had been exhausted by proper presentation to the state court, there would be no colorable claim of prosecutorial misconduct. Richardson claims that the state court refused to hear this claim. Reply Brief at Paragraph 60. I see no evidence in support of that assertion, but if there were such the claim is still meritless.

Claim Four, repeated in Claims Sixteen through Eighteen, is that there was improper comment on Richardson's invocation of his right to remain silent. It is also not exhausted and also has no factual foundation. Richardson repeats the claim several times, see e.g. Reply Brief Paragraphs 61-70, but does not give any record citation as to when this took place at the trial. Richardson likewise asserts several times that the state court refused to hear this claim but there is no citation to any evidence of any refusal. Because neither Siford, Tinari, or Heuston made this claim in the state court, for this court to consider it Richardson would have to offer substantial evidence that Tinari was ineffective for failing to raise the claim, and Heuston ineffective for failing to raise Tinari's ineffectiveness in failing to develop the claim, and he does not.

Claims Five, Six, Seven, Seventeen, and Eighteen, insofar as they suggest some impropriety in Siford's selection of a jury, would have required as a foundation for relief in state court some evidence that it was an abuse of discretion to deny a continuance to allow Tinari to re-do jury selection. In habeas review in federal court, since the Supreme Court has established no federal law on continuances, Richardson would further have to show some ineffectiveness by Siford or other Sixth Amendment violation in the jury selection. Richardson does not attempt to do the former and attempts to do the latter solely so by pointing out that he is black and was tried by an all-white jury chosen from an all-white venire. Richardson describes this as a <u>Batson</u> challenge, but since there were no black members of the venire, the challenge is one under <u>Strauder v. West Virginia</u>, 100 U.S. 303 (1879), and <u>Batson</u> is inapplicable.

I could if I had to take judicial notice of census data: Blair County has very few persons of African-American ancestry, and the empaneling of an all-white jury from an all-white venire would not be unusual there or in many other Pennsylvania counties. Richardson does not present anything to show that his venire or any venire in Blair County was chosen in violation of the county's duty to select a constitutionally valid venire. Once again, Richardson

did not present this claim to the state court and provides no evidence for his claim that he not only did so but that the state courts refused to hear it. There was no challenge by Siford, Tinari, or Heuston to the venire, and for this court to consider Richardson's claims Richardson would have to offer substantial evidence that Richardson would have to offer substantial evidence that Siford was ineffective for failing to raise the claim and Heuston ineffective for failing to raise Siford's ineffectiveness in failing to develop the claim. He does not.

Claim Eight (and Eighteen in part), the after-discovered evidence claim based on Rena Davis' statement, is exhausted. It was thoroughly analyzed and correctly (and therefore not unreasonably incorrectly) decided by the Pennsylvania Superior Court on direct appeal. It therefore passes review under AEDPA.

Claim Nine (and Eighteen in part), the change of venue or venire claim, was likewise analyzed and correctly (and therefore not unreasonably incorrectly) decided by the Pennsylvania Superior Court on direct appeal. I note that there was no evidence that the members of the Blair County venire would have ordinarily been exposed to the neighboring county's newspaper, so the Pennsylvania Superior Court probably gave this claim more weight than the evidence deserved.

Claim Ten (and Eighteen in part), the challenge to the prosecution's closing, was presented as and analyzed as a state law claim on direct appeal. Tinari did not refer to any federal law or cite a single federal case, and the appellate panel observed that Tinari had not been able to find any precedent (state or federal) for the proposition that the prosecutor's handling of the firearm during the closing was misconduct. To the extent that Richardson distinguishes between state and federal law (in his Reply Brief at Paragraph 113 he refers to this as a denial of his "Human Right," citing the Universal Declaration of Human Rights, and at Paragraph 118 he cites a number of federal cases), a claim of state law error cannot be considered exhausted for purposes of habeas corpus simply by attempting to repackage it as a federal claim by adding some federal citations. See Duncan v. Henry, 513 U.S. at 366 (1995)("If a habeas petitioner wishes to claim that [a] ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.")

Claim Eleven, the post-arrest silence claim that was exhausted, was rejected because as the Pennsylvania Superior Court noted "the facts do not support Richardson's claims that the prosecutor's question invoked a response involving post-arrest

31

silence in this case." Mem. op. at 10. No doubt because there is a large body of favorable law that he could cite, on appeal (but not at trial) Tinari characterized what was at most maladroit phrasing of the question to Himes as a comment on post-arrest silence, but as the state court explained neither the question nor the answer referred to anything "post-arrest." There is no dispute about the facts underlying the appellate court's analysis and the analysis is not incorrect, much less so unreasonably wrong that fair-minded jurists could not agree with it.

Claim Twelve is the sufficiency of the evidence claim. The jury in this case was convinced by the testimony of Karla Jo Thomas-Smith, together with the other eye-witness testimony and expert witness testimony that Richardson was the one firing the shots that night and that one of the shots appeared to be aimed at Vicki Smith. The only question under <u>Jackson</u> is whether the key finding, that by aiming at Vicki Smith Richardson had specific intent to kill Vicki Smith that transferred to Patience Ferguson, was so insupportable as to fall below the threshold of bare rationality. The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA. <u>See</u> <u>Coleman v. Johnson</u>, 132 S.Ct. at 2065. Tinari called and Richardson calls attention to the existence of

contradictory evidence, but that is more appropriate to a state law weight of the evidence claim than to a <u>Jackson v. Virginia</u> claim. Because a reasonable jurist could say that a rational jury had sufficient evidence of Richardson's intent to murder Smith, a federal habeas court cannot say the verdict was unsupported.

Claims Thirteen, Fourteen, and Fifteen fall for several reasons, each one of which would be sufficient standing alone. First, any claim based on Doctor Bonnell's testimony, as with any claim based on after-discovered evidence, would require evidence that this testimony existed at the time of trial and was known to Tinari. There is none. Richardson implicitly argues that for a claim of Tinari's ineffectiveness, such evidence is not necessary: since Doctor Bonnell gave this testimony and it can be presumed would have given this testimony at the time of trial, there must have been someone available to Tinari at the time of trial that would have testified similarly. This is not correct, and in addition it certainly was not an argument presented to the state courts. In his Brief filed at the Superior Court in the appeal from the denial of PCRA relief, Heuston, recognizing that Doctor Bonnell's availability and Tinari's knowledge were necessary elements, made an assertion that the Commonwealth stipulated that Doctor Bonnell was available at the time of trial. Brief for

Appellant at 13. This is not so. At the PCRA hearing the Commonwealth stated "We're prepared to stipulate that that is the affidavit they received and we're certainly not going to stipulate to any accuracy." PCRA Transcript at 2. The affidavit itself does not mention anything about availability at the time of trial or Tinari's knowledge.

Second, it must be stressed that Tinari's effectiveness is measured by the defense he did present, not the possibly better defense he might have presented. At trial, Richardson's defense was straightforward: he was not the shooter. An effort on the part of Tinari to stitch that defense to one based on Doctor Bonnell's opinion would force the jury to consider the proposition "the bullet Richardson didn't shoot isn't the bullet that killed Ms. Ferguson." That might not itself be ineffective, might well be weaker in the jury's eyes than either simple defense taken separately. Judge Carpenter rejected the claims because he found Doctor Bonnell's testimony to be unknown to Tinari, and additionally the insubstantial and cursory analysis of a hired gun. Both of his findings are due deference under AEDPA (the first is undisputed, the second is not unreasonable) and either one sinks a claim that Tinari was ineffective.

Third, Doctor Bonnell's testimony is certainly not so compelling as to make unreasonable the Pennsylvania Superior Court's additional finding that it would have been insufficient to affect the outcome of trial. Doctor Bonnell did not dispute that a bullet did in fact go through Patience Ferguson and did knock out one tooth. Doctor Bonnell's testimony suggested only that the bullet found by the Commonwealth was not that bullet, and that some other bullet must have struck the victim. In the absence of any evidence that there was more than one shooter and one pistol to supply that hypothetical bullet, it would be more than reasonable for a jury to reject Doctor Bonnell's opinion, even if it were unrefuted. And as Judge Carpenter noted in his PCRA Opinion at 5, the evidence would not have been unrefuted because Doctor Cottle, who performed the autopsy, did offer an opinion that the bullet found was capable of causing the fatal injury to Ms. Ferguson.

Claims Sixteen through Eighteen restate earlier claims and do not need separate discussion.

The petition should be denied.

A certificate of appealability should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Richardson does not show that Judge Carpenter and the Pennsylvania Superior Court,

in adjudicating the claims presented to them, made errors so well understood and comprehended in existing law that they were beyond any possibility for fairminded disagreement. <u>Harrington v. Richter</u>, <u>supra</u>. Richardson does not show cause and prejudice that would permit this court to consider his defaulted claims that he did not fairly present to the state courts. No certificate of appealability should issue.

Pursuant to 28 U.S.C. § 636(b)(1), the parties are given notice that they have fourteen days to serve and file written objections to this Report and Recommendation.

DATE: 9 January 2017

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

Lavelle Richardson FE-0568
S.C.I. Graterford
P.O. Box 244
Graterford, PA 19426-0246